IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID ARAFAT, NOOR ARAFAT,
and MARISSA ARAFAT,

Plaintiffs,

v.

OAKLAND COUNTY, a municipal corporation, Oakland County Sheriff MICHAEL BOUCHARD, in his official capacity, Oakland County Sheriff's Detective DAVID SCHOENEWEG and VARIOUS UNKNOWN NAMED OFFICERS of the Oakland County Sheriff's Department, in their individual and official capacities, jointly and severally,

Defendants.

Case 2:26-cv-13175
Hon.

DEMAND FOR JURY TRIAL

---

MICHAEL J. KEMNITZ, P.C.
BY: MICHAEL J. KEMNITZ (P57227)
Attorney for Plaintiff
500 Griswold, Suite 2400
Detroit, Michigan 48226
(313) 967-0100
michael@kemnitz.law

---

**PLAINTIFFS' COMPLAINT AND JURY DEMAND**

NOW COME PLAINTIFFS, DAVID ARAFAT, NOOR ARAFAT, and MARISSA ARAFAT, by and through their undersigned counsel, and, by way of their Complaint against the above captioned defendants, state as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 because it arises under the Constitution and laws of the United States, including but not limited to 42 U.S.C. § 1983, 42 U.S.C. § 1988, and the Fourth Amendment to the United States Constitution.

2. This Court has supplemental jurisdiction over the Michigan state law claims raised herein pursuant to 28 U.S.C. § 1367 because such claims are so related to the claims in this action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

## VENUE

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all defendants reside in the Eastern District of Michigan and all events giving rise to the claims raised herein occurred in the Eastern District of Michigan.

## PARTIES

4. Plaintiff DAVID ARAFAT is, and has been at all times relevant herein, a resident of Oakland County, Michigan and a citizen of the United States. At all times relevant herein, Plaintiff David Arafat owned a home located on Vineyard Street in Commerce Township, Michigan 48382, along with his wife,

Plaintiff Noor Arafat, where they both lived with their two children, including Plaintiff Marissa Arafat.

5. Plaintiff NOOR ARAFAT is, and has been at all times relevant herein, a resident of Oakland County, Michigan and a citizen of the United States. At all times relevant herein, Plaintiff Noor Arafat owned a home located on Vineyard Street in Commerce Township, Michigan 48382, along with her husband, Plaintiff David Arafat, where they both lived with their two children, including Plaintiff Marissa Arafat.

6. Plaintiff MARISSA ARAFAT is, and has been at all times relevant herein, a resident of Oakland County, Michigan and a citizen of the United States. At all times relevant herein, Plaintiff Marissa Arafat lived at the home located on Vineyard Street in Commerce Township, Michigan 48382, along with her parents, Plaintiffs David and Noor Arafat.

7. Defendant SHERIFF MICHAEL BOUCHARD (hereinafter Defendant BOUCHARD) at all times relevant herein, was the elected Sheriff of Oakland County and he is sued in his official capacity. Defendant BOUCHARD is responsible, by statute and the Michigan Constitution, for the supervision, maintenance and control of Defendant Oakland County Sheriff's Department and is directly responsible for the creation, implementation and continuation of police training, policies, practices and/or customs.

8. At all times relevant herein, Defendant BOUCHARD had supervision and control of the below described Individual Defendants.

9. Defendant OAKLAND COUNTY is a municipal public corporation created and established under the Constitution, laws and statutes of the State of Michigan, with its county seat located in the City of Pontiac, County of Oakland, State of Michigan. For all times relevant hereto, Defendant OAKLAND COUNTY had supervision of and control of the Oakland County Sheriff's Department and all employees thereof, including the below described Individual Defendants, and was directly responsible for the creation, implementation and continuation of police training, policies, practices and/or customs.

10. In his capacity as Sheriff, Defendant BOUCHARD is the final policymaker for Defendant OAKLAND COUNTY with respect to the creation and implementation of policies, customs and practices at the Oakland County Sheriff's Department and the Oakland County Jail.

11. Defendant DAVID SCHOENEWEG, at all times relevant herein, was an agent/employee of the Oakland County Sheriff's Department, and he was acting within the scope of his employment and authority as a law enforcement officer, under color of law and pursuant to the policies and practices of the Oakland County Sheriff's Department. Defendant Schoeneweg is sued in his individual and

official capacities. Upon information and belief, Defendant Schoeneweg is a resident of Oakland County, Michigan.

12. Defendants VARIOUS UNKNOWN NAMED OFFICERS of the Oakland County Sheriff's Department, at all times relevant herein, were agents/employees of the Oakland County Sheriff's Department, and they were acting within the scope of their employment and authority as law enforcement officers, under color of state law and pursuant to the policies and practices of the Oakland County Sheriff's Department. Each such defendant is sued in his individual and official capacities. Upon information and belief, each such defendant is a resident of Oakland County, Michigan. At the time of the filing of this Complaint, Plaintiffs do not know the precise number of officers who participated in the events described herein because the only person present during the relevant events was 18-year-old Plaintiff Marissa Arafat who was terrified during the events described herein and cannot recall exactly how many officers were present.

13. Defendants SCHOENEWEG and Defendants VARIOUS UNKNOWN NAMED OFFICERS of the Oakland County Sheriff's Department are collectively referred to herein as "the Individual Defendants," and all actions attributed herein to the Individual Defendants are attributed to each such Defendant individually and collectively.

14. At all times relevant herein, the Individual Defendants were part of the Oakland County Sheriff's Department Fugitive Apprehension Team (F.A.T.) within the Oakland County Sheriff's Department's Investigative and Forensic Services Division.

## GENERAL ALLEGATIONS

### THE PRIOR INVESTIGATION OF PLAINTIFF DAVID ARAFAT

15. From approximately April, 2024 to October 25, 2024, officers of the Oakland County Sheriff's Department conducted a long-term investigation of Plaintiff David Arafat. This investigation included the use of a GPS tracker on Plaintiff David Arafat's white Ram pickup for approximately 70 days, as well as physical surveillance of him, his white Ram pickup, and Plaintiffs' home.

16. On October 25, 2024, the investigation into Plaintiff David Arafat by officers of the Oakland County Sheriff's Department culminated in the execution multiple search warrants, including for Plaintiffs' home and Plaintiff David Arafat's white Ram pickup.

17. On the date of the execution of these search warrants, officers of the Oakland County Sheriff's Department stopped Plaintiff in his white Ram pickup as he was leaving his home and, pursuant to said search warrant, searched his vehicle and discovered a personal use amount of cocaine (approximately 3.3 grams) in the storage area of the driver's door.

18. Although Plaintiff David Arafat was initially taken into custody following the discovery of the small amount of cocaine in his truck, he was released without any charges the following day.

19. The execution of the search warrant at Plaintiff David Arafat's home did not result in the seizure of any additional cocaine or anything illegal, but officers did seize property that was lawfully acquired, owned, and possessed by Plaintiffs, including four cellphones, which the Oakland County Sheriff's Department nevertheless sought to forfeit.

20. In lieu of formal forfeiture proceedings, Plaintiff David Arafat retained counsel and, through that counsel, negotiated a settlement agreement with the Oakland County Sheriff's Department regarding the seized property, which included the return of the four cell phones to Plaintiff David Arafat. This settlement agreement was finalized on or about November 7, 2024.

21. In addition to retaining counsel to resolve the forfeiture matter, Plaintiff David Arafat retained counsel to address any potential criminal issues that might arise in the future from the discovery of the small amount of cocaine in his pickup. Plaintiff David Arafat's counsel made contact with the officer in charge of the case, Oakland County Sheriff Detective Matthew Matchett, and advised that, in the event a warrant for Plaintiff David Arafat's arrest was obtained, he would surrender voluntarily as directed by Detective Matchett. Plaintiff David Arafat's

counsel provided counsel's contact information to facilitate that notification in the event a warrant was obtained. In particular, on December 18, 2024, Plaintiff David Arafat's counsel sent the following text message to Detective Matchett:

> Michael Kemnitz attorney for David Arafat. Just let me know when you have the warrant and I will surrender him immediately. My email is michael@kemnitz.law.

22. Detective Matchett read the above text message shortly after it was sent on December 18, 2024, as indicated by the "read" message generated by the settings Detective Matchett had set on his iPhone to notify those who texted him when he read a text message.

### PLAINTIFF DAVID ARAFAT'S FORMAL COMPLAINT AGAINST AN EMPLOYEE OF OAKLAND COUNTY SHERIFF'S DEPARTMENT

23. On or about June 17, 2025, more than seven months after finalizing the forfeiture settlement agreement, and after the four cell phones had not been returned to Plaintiff David Arafat, as he had expected following the forfeiture settlement, Plaintiff David Arafat contacted the Oakland County Sheriff's Department to seek the return of those phones. During Plaintiff David Arafat's conversation with an employee of the Oakland County Sheriff's Department regarding his phones, he was treated unprofessionally by said employee.

24. As a result of this mistreatment, Plaintiff David Arafat filed a formal complaint against the employee (Oakland County Sheriff Complaint No. 2025-0071) on June 17, 2025. While Plaintiff David Arafat was advised that some

action had been taken against the employee as a result of the complaint, he never received a formal written response to his complaint. Detective Matchett was aware of Plaintiff David Arafat's complaint against the employee and, upon information and belief, so were the Individual Defendants at the time of their actions herein.

25. Unfortunately, this complaint by Plaintiff David Arafat marked him for retaliation by officers of the Oakland County Sheriff's Department, including by the Individual Defendants.

### THE ARREST WARRANT FOR PLAINTIFF DAVID ARAFAT

26. On or about October 6, 2025, nearly one year after discovering the small amount of cocaine in Plaintiff David Arafat's truck, Detective Matchett swore to a criminal complaint charging Plaintiff David Arafat with a single count of simple possession of cocaine, and an arrest warrant was issued for him based on that complaint.

27. Despite the fact that Plaintiff David Arafat had retained counsel who expressly advised that Plaintiff David Arafat would surrender voluntarily and immediately upon a warrant being issued, no officer of the Oakland County Sheriff's Department contacted Plaintiff David Arafat's counsel to arrange his voluntary surrender. Nor did any officer of the Oakland County Sheriff's Department contact Plaintiff David Arafat directly to advise him of the warrant, even though said officers knew his cell phone number.

28. While Plaintiff David Arafat did not have a right to voluntarily surrender, such a request for voluntary surrender is customarily accommodated, especially where the person has retained counsel and established contact with the investigating officers and committed to voluntary surrender in advance, and especially where the person has no prior felony criminal record, and especially where the offense for which the person is to be arrested is relatively minor, such as the simple possession of a personal use amount of a controlled substance, and where there is no evidence to suggest the person is a flight risk if informed of the existence of the warrant.

29. The decision to not permit Plaintiff to voluntarily surrender, and to instead forcibly arrest Plaintiff pursuant to the warrant, was intended to punish Plaintiff David Arafat for his complaint against an employee of the Oakland County Sheriff's Department.

## PLAINTIFF DAVID ARAFAT ACTS PROACTIVELY TO RESOLVE THE ARREST WARRANT WHILE THE INDIVIDUAL DEFENDANTS STORM HIS HOME WHEN HE IS OBVIOUSLY NOT THERE

30. On Sunday, October 12, 2025, nearly one year after the initial search of his truck and his home and, by chance, just six days after Detective Matchett obtained the arrest warrant, Plaintiff David Arafat learned that he may have a warrant out for his arrest by searching his name on the public website

https://micourt.courts.michigan.gov, which provides a public record of all cases in most courts in Michigan, including the 52-1 District Court in Novi, Michigan.

31. On Sunday, October 12, 2025, at 6:32PM, immediately upon seeing his name on the 52-1 District Court's website, Plaintiff David Arafat contacted his attorney to try figure out whether he had a warrant out for his arrest and, if so, to resolve that warrant by surrendering himself to the Court even before waiting for Detective Matchett to contact his counsel to arrange his voluntary surrender, as he had expected would happen given his attorney's prior communication with Det. Matchett.

32. Because Plaintiff David Arafat first learned of his possible warrant on a Sunday evening, and since all courts were closed the next day, Monday, October 13, 2025 for Columbus Day, Plaintiff David Arafat and his counsel agreed to address the possible warrant first thing in the morning on Tuesday, October 14, 2025 and determine if there was, in fact, a warrant and, if so, when he could do a "walk-in" arraignment, as not all courts do "walk-in" arraignments every day of the week.

33. On Tuesday, October 14, 2025 at 8:15AM, Plaintiff David Arafat initiated the following text exchange with his attorney:

David Arafat (at 8:15AM): Good morning, let me know if we can get the arraignment done today.

Counsel (at 8:15AM): Waiting for the Court to open.

David Arafat (at 8:16AM): Okay, keep me posted.

34. On October 14, 2025, at approximately 9:30AM, after Plaintiff David Arafat had taken the initiative to resolve the outstanding warrant that he had never been advised of, and as he was in active communication with the Court, through counsel, to arrange his walk-in arraignment, the Individual Defendants appeared at Plaintiffs' home to execute the arrest warrant.

35. When the Individual Defendants arrived at Plaintiffs' home, Plaintiff David Arafat's white Ram pickup was not present at the residence, and there were no signs that he was at the residence, because he was not there.

36. The prior six-month-long investigation of Plaintiff David Arafat, including the use of a GPS tracker on his white Ram truck for approximately 70 days, and the prior execution of the search warrant at Plaintiffs' home, generated a wealth of information regarding Plaintiff David Arafat's pattern of life and the living dynamics at Plaintiffs' home. Regarding Plaintiff David Arafat's pattern of life, this information revealed that Plaintiff David Arafat leaves his home every weekday, and many weekend days, in the 8:00AM hour, or earlier, that he parks his white Ram in the driveway (never in the garage), that he only drives the white Ram, and that no one else in the home drives the white Ram. Further, this information revealed that Plaintiffs' home was occupied by Plaintiff David Arafat, Plaintiff Noor Arafat, his wife, their teenage daughter, Plaintiff Marissa Arafat, and

their teenage son. This information also revealed that the Arafat family owned three vehicles, all of which were at the residence at the time of the execution of the search warrant on October 25, 2024, with Plaintiff David Arafat's white Ram truck having been stopped as it left the home at approximately 8:30AM (consistent with his normal departure time in the 8:00AM hour, or earlier).

37. All of the information set forth in the above paragraph was in the custody and control of the Oakland County Sheriff's Department and was readily available for the Individual Defendants to review prior to their appearance at Plaintiffs' home to execute the arrest warrant. All of this information was also personally known to Detective Matchett, who was not only the officer in charge of the prior investigation of Plaintiff David Arafat, but he was also the affiant for the search warrant affidavit in support of the search warrants for both Plaintiff David Arafat's white Ram pickup and Plaintiffs' home, as well as the affiant for the two GPS tracker warrants for the white Ram pickup, and he was physically present in Plaintiffs' home during the execution of the search warrant, when the entire Arafat family was home, and thus knew who the occupants of the residence were.

38. Even if the Individual Defendants had made no independent effort whatsoever to consult the vast wealth of readily available information regarding Plaintiff David Arafat's pattern of life and the dynamics of Plaintiffs' home prior to their arrival at Plaintiffs' home, Detective Matchett was identified as the

complaining witness on the face of the arrest warrant for Plaintiff David Arafat. Thus, in one quick call to Detective Matchett, the Individual Defendants could have immediately learned whether it was likely that Plaintiff David Arafat would be home at 9:30AM on a weekday (he would not), what the house would look like if Plaintiff David Arafat was home (the white Ram would be in the driveway), and whether others may be in the home even if Plaintiff David Arafat was not (yes, three other people, including two teenagers).

39. At the time they arrived at Plaintiffs' home on October 14, 2025, the Individual Defendants knew that Plaintiff David Arafat still owned the white Ram pickup, or they had the immediate ability to learn that information.

40. The Individual Defendants were either aware of, and ignored, the above information regarding Plaintiff David Arafat and the fact that the absence of the white Ram meant that he was not at home, or they made no effort whatsoever to consult the substantial body of readily available information within the Oakland County Sheriff's Department, or contact Detective Matchett, for information about their potential arrestee and his home.

41. Despite the fact that there was absolutely no indication whatsoever that Plaintiff David Arafat was at home, the Individual Defendants forcibly entered Plaintiffs' home. The Individual Defendants accomplished this forcible entry by first attempting to break down Plaintiffs' front door, which they failed to do, but

damaged it in the process, and then by shattering a sliding glass door at the rear of Plaintiff's house.

42. The Individual Defendants then entered Plaintiffs' home with guns drawn and proceeded to march through the house, where they eventually encountered 18-year-old Plaintiff Marissa Arafat, who was the only person in the home and who was seated in her car in the garage talking with friends on social media. The forcible entry into Plaintiffs' home by the Individual Defendants, who had their weapons drawn at the time of that entry and who barked commands at Plaintiff Marissa Arafat with those weapons drawn, terrified the 18-year-old, especially since she was home alone without her parents. The vehicle in which Plaintiff Marissa Arafat was sitting in the garage at the time the Individual Defendants forced their way into Plaintiffs' home was the only one of Plaintiffs' three vehicles that was at the home at the time.

43. Despite the fact that it was quickly clear, upon the Individual Defendants' forced entry into the home, that Plaintiff Marissa Arafat was the only person at the home, and despite the fact that there was absolutely no evidence whatsoever that Plaintiff David Arafat was in the home, and Plaintiff Marissa Arafat informed them he was not in the home, the Individual Defendants searched Plaintiffs' entire home.

44. The Individual Defendants' purpose in forcibly entering Plaintiffs' home was, at least in part, to impose the trauma of a forced entry into the home on Plaintiff David Arafat and his family as retaliation for the complaint Plaintiff David Arafat made against an employee of the Oakland County Sheriff's Department.

45. That the Individual Defendants would force entry into Plaintiffs' home when there was absolutely no indication whatsoever that Plaintiff David Arafat was in the home, and where all information possessed within the Oakland County Sheriff's Department clearly demonstrated that he would not have been at home at that time, means that:

a. The Individual Defendants were so completely ignorant of the below described clearly-established Fourth Amendment law governing the entry into a home with only an arrest warrant, that said ignorance is due to Defendants Oakland County's and/or Bouchard's failure to train, or

b. The Individual Defendants were well aware of the below described clearly-established Fourth Amendment law and ignored it because of their desire to inflict the trauma of a forced entry into Plaintiffs' home as retaliation for the complaint Plaintiff David Arafat made against an employee of the Oakland County Sheriff's Department.

46. On October 14, 2025, as Plaintiff David Arafat was actively in communication with his attorney to coordinate his walk-in arraignment with the Court on a warrant that no member of the Oakland County Sheriff's Department had advised him even existed, despite his counsel's express promise to surrender him voluntarily on any warrant, he learned of the siege on his home and the traumatization of his daughter under the guise of attempting to execute the arrest warrant for him.

47. Immediately upon learning of the siege at his home, Plaintiff David Arafat reported to the 52-1 District Court in Novi, Michigan to self-surrender on the warrant, as he has always intended to do, and as he, through counsel, assured Detective Matchett that he would do at the very outset of the case a year earlier.

48. Once at the Court, Plaintiff David Arafat was arraigned and, given the minor nature of the charged offense, he was quickly released on a personal bond. Immediately after his arraignment, Plaintiff David Arafat returned home to comfort his terrified daughter and begin the process of cleaning up and repairing the physical damage to his home caused by the Individual Defendants.

**THE INDIVIDUAL DEFENDANTS WERE STATE ACTORS, NOT FEDERAL**

49. Before leaving Plaintiffs' home on the date of the Individual Defendants' forced entry, Defendant Schoeneweg left his Oakland County Sheriff's Department business card identifying himself as a Detective with the

Oakland County Sheriff's Department Fugitive Apprehension Team (F.A.T.) within the Oakland County Sheriff's Department's Investigative and Forensic Services Division, and listing all of his Oakland County Sheriff's Department contact information (address, cell number, and email address).

50. According to the Oakland County Sheriff's Department website "[t]he primary function of [F.A.T.] is to apprehend serious and career offenders who are wanted for arraignment on a warrant for trial."[1] To be certain, Plaintiff David Arafat's warrant for simple possession of approximately 3.3 grams of cocaine does not fall within the normal stated purview of F.A.T.

51. Although clearly operating as state actors executing a minor state warrant for the Oakland County Sheriff's Department, and producing their Oakland County Sheriff Department credentials, one or more of the Individual Defendants advised Plaintiff Marissa Arafat that they were also United States Marshals.

52. While, at times, members of the Oakland County Sheriff's Department F.A.T. may work with the United States Marshals Service as part of other, federally-led, task forces, and may even be federally deputized when working with such a federally-led task force, this was not one of those times. The Individual Defendants were state actors, not federal, throughout their actions

[1] https://www.oakgov.com/government/sheriff/law-enforcement/investigative-forensic-services

described herein. F.A.T. is an internal unit of the Oakland County Sheriff's Department, created by the Oakland County Sheriff's Department, and its policies, protocols, and standard operating procedures are set and governed exclusively by Defendant Oakland County, and it is funded by Defendant Oakland County. The members of the Oakland County Sheriff's Department who work within F.A.T., including the Individual Defendants, are state actors, not federal actors, and the Individual Defendants' decision to forcibly enter Plaintiffs' home was made by virtue of an exercise of state authority, not federal.

53. The Individual Defendants were not acting within the scope of their authority, nor would any reasonable officer believe, and the Individual Defendants did not believe, that they were acting within the scope of their authority when they engaged in the conduct described herein.

54. The Individual Defendants were not acting in good faith, and were acting with malice, when they engaged in the conduct described herein, and the Individual Defendants did not believe that they were acting in good faith when they entered Plaintiffs' home in the absence of any indication whatsoever that Plaintiff David Arafat was in the home, nor would a reasonable officer believe that he was acting in good faith when he entered Plaintiffs' home under the facts as they appeared to the Individual Defendants.

**COUNT I**
**VIOLATION OF FOURTH AMENDMENT**
**INDIVIDUAL DEFENDANTS**
**42 U.S.C. 1983**

55. The Individual Defendants deprived Plaintiffs of their clearly established rights under the Fourth Amendment to United States Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

56. At all times relevant herein, Plaintiffs each had a clearly established Fourth Amendment interest in their home located on Vineyard Street in Commerce Township, Michigan 48382.

57. The United States Supreme Court has recognized that "when it comes to the Fourth Amendment, the home is first among equals." *Florida v. Jardines,* 569 U.S. 1, 6 133 S.Ct. 1409, 185 L.Ed. 2d 495 (2013). Additionally, the Supreme Court has explained that because "the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed[,] ... [i]t is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 585-586, 100 S.Ct. 1371, 69 L.Ed. 639 (1980). Thus, unless one of the "few well-defined and carefully circumscribed circumstances" justifying a warrantless

entry exists, the Fourth Amendment reasonableness standard "generally requires that police obtain a warrant based upon a judicial determination of probable cause prior to entering a home." *Thacker v. City of Columbus, 328 F.3d 244, 252 (6th Cir.200).* These legal principles, and Plaintiffs' constitutional rights, were clearly established at the time of Defendants' actions herein.

58. The Individual Defendants herein did not have a search warrant permitting them to enter or search Plaintiffs' home, nor did any recognized exception to the warrant requirement exist at the time of the Individual Defendants' warrantless entry into Plaintiffs' home.

59. While the Individual Defendants were armed with an arrest warrant for Plaintiff David Arafat, this did not authorize forcible entry into Plaintiffs' home or search the home. "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives ***when there is reason to believe the suspect is within***." *Payton*, 445 U.S. at 603. Emphasis added. The Sixth Circuit has clarified that "an arrest warrant is sufficient to enter a residence if the officers, by looking at common sense factors and evaluating the totality of the circumstances, establish a reasonable belief that the subject of the arrest warrant is within the residence at that time." *United States v. Pruitt*, 458 F.3d 477, 483 (6th Cir. 2006). These legal

principles, and Plaintiffs' constitutional rights, were clearly established at the time of the Individual Defendants' actions herein.

60. At the time the Individual Defendants forcibly entered Plaintiffs' home, there was no reason to believe Plaintiff David Arafat was in the home, and the Individual Defendants, looking at common sense factors and evaluating the totality of the circumstances, could not and did not establish a reasonable belief that Plaintiff David Arafat was within the residence prior to making their forced entry into Plaintiffs' home. Nor would any reasonable officer have believed that Plaintiff David Arafat was in the home at the time the Individual Defendants forcibly entered the home.

61. The Individual Defendants deprived Plaintiffs of their clearly established rights under the United States Constitution, including, but not limited to, those rights secured to them under the Fourth Amendment and Fourteenth Amendment, when they forced entry into Plaintiffs' home and searched it, as described above, and they were acting under color of state law when they did so.

62. As a direct and proximate cause of the actions of the Individual Defendants, as detailed above, Plaintiffs suffered damages that include, but are not limited to: deprivation of the rights secured to them by the United States Constitution, and the Amendments thereto, including but not limited to those rights

secured by the Fourth and Fourteenth Amendments, physical damage to their home, and mental and emotional suffering.

63. The Individual Defendants are each liable for exemplary and punitive damages, as well as Plaintiffs' attorney fees.

**COUNT II**
***MONELL* LIABILITY**
**DEFENDANTS OAKLAND COUNTY AND BOUCHARD**

64. Defendants Oakland County and Bouchard, through the below described policies, practices, or customs, created through a failure to train, deprived Plaintiffs of their well-established rights and privileges under the United States Constitution, including but not limited to those secured to them under the Fourth and Fourteenth Amendments.

65. In particular, Defendants Oakland County and Bouchard failed to adequately train the officers of the Oakland County Sheriff's Department, including but not limited to the Individual Defendants, for the recurring situations that the officers of the Oakland County Sheriff's Department, including the Individual Defendants, must perform. The failures of this training include, but are not limited to:

a. Establishing or maintaining a unit (the Fugitive Apprehension Team, F.A.T.), which included the Individual Defendants, where the primary duty of the officers in that unit was to execute arrest warrants, but not

training said officers on the above well-established constitutional limitations on the forcible entry into a residence when those officers are only armed with an arrest warrant, not a search warrant.

b. Failing to train the F.A.T. officers, including the Individual Defendants, to, among other things, conduct a basic investigation or review of available information, prior to execution of an arrest warrant at a residence, regarding the person to be arrested to obtain information about the likelihood that the individual will be at the residence at the time the officers seek to enforce the arrest warrant, and/or learn what objectively observable facts at the residence would indicate the person to be arrested would be present at the residence, and/or learn who, other than the person to be arrested, lives at the home and may be present even if the person to be arrested is not.

c. The basic investigation and/or review of information that Defendants Oakland County and Bouchard should have trained, but did not train, the Individual Defendants to undertake includes, but is not limited to:

    i. Reviewing information within the Oakland County Sheriff's Department regarding the person to be arrested and that person's residence, and/or

ii. Contacting the officer who obtained the arrest warrant for the person to be arrested to obtain relevant information about the person to be arrested and that person's residence, and/or

iii. Utilizing databases available to law enforcement to obtain relevant information about the person to be arrested and that person's residence, including but not limited to those that would enable the Individual Officers to determine what vehicles the person to be arrested owns.

66. Through such failures to train, Defendants Oakland County and Bouchard created an obvious potential for violations of well-established constitutional rights. That is, by creating a unit of officers whose primary duty was to apprehend individuals pursuant to arrest warrants, but failing, through the above failures to train, to give those officers the tools they need to constitutionally execute those arrest warrants at the homes of would-be arrestees, it was obvious that such failure to train would result in officers forcibly entering homes to effectuate arrest warrants where there was no indication that the person to be arrested was inside the home.

67. Through the above detailed policies, practices, customs, actions and/or failures, Defendants Oakland County and Bouchard were deliberately indifferent to the probability of citizens being deprived of their well-established rights and privileges under the United States Constitution.

68. The above described actions of the Individual Defendants were a direct result of the above detailed policies, practices, and/or customs of Defendants Oakland County and Bouchard.

69. As a direct and proximate result of Defendants Oakland County and Bouchard's above detailed policies, practices, customs, actions and/or failures, Plaintiffs' clearly established constitutional rights under the United States Constitution, including but not limited to their Fourth and Fourteenth Amendment rights, were violated when the Individual Defendants forced entry into Plaintiffs' home.

70. As a direct and proximate result of Defendants Oakland County's and Bouchard's above detailed policies, practices, customs, actions and/or failures, Plaintiffs suffered damages, including but not limited to: deprivation of the rights secured to them by the United States Constitution, and the Amendments thereto, including but not limited to those rights secured by the Fourth and Fourteenth Amendments, physical damage to their home, and mental and emotional suffering.

71. Defendants Oakland County and Bouchard are each liable for exemplary and punitive damages, as well as Plaintiffs' attorney fees.

**COUNT III**
**TRESPASS**
**INDIVIDUAL DEFENDANTS**

72. The Individual Defendants intentionally, and without authorization, intruded on Plaintiffs' property.

73. As a direct and proximate result of the Individual Defendants actions, Plaintiff suffered damages, including but not limited to the unauthorized intrusion onto their property, and the attendant damage to their property.

**COUNT IV**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**INDIVIDUAL DEFENDANTS**

74. The conduct of the Individual Defendants, a group of heavily armed men in full tactical gear who broke into Plaintiffs' home, without any constitutional justification for doing so, and who confronted 18-year-old Plaintiff Marissa Arafat with firearms drawn and shouting commands at her, was extreme and outrageous and the Individual Defendants' conduct was intentional, reckless, and so extreme and outrageous as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. This is especially so where the Individual Defendants conduct was intended as punishment for Plaintiff David Arafat's complaint against an Oakland County

Sheriff's Department employee, though the Individual Defendants' conduct was extreme and outrageous even without this ulterior motive.

75. The Individual Defendants intended to cause all occupants of Plaintiffs' home, including Plaintiff Marissa Arafat, severe emotional distress and/or the Individual Defendants were so reckless that any reasonable person would have known that severe emotional distress would result from such conduct.

76. As a direct and proximate cause of the Individual Defendants' conduct, 18-year-old Plaintiff Marissa Arafat suffered severe emotional distress.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment against all Defendants, jointly and severally, in whatever amount a jury determines to be fair, reasonable and just, plus costs and attorney fees.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all claims raised herein.

Respectfully submitted,

/s/ *Michael Kemnitz*
MICHAEL J. KEMNITZ, P.C.
BY: MICHAEL J. KEMNITZ (P57227)
Attorney for Plaintiffs
500 Griswold, Suite 2400
Detroit, Michigan 48226
(313) 967-0100
michael@kemnitz.law

Dated: September 3, 2026

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

DAVID ARAFAT, NOOR ARAFAT, MARISSA ARAFAT

**(b)** County of Residence of First Listed Plaintiff: OAKLAND
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael J. Kemnitz, PC / Michael J. Kemnitz (P57227)
500 Griswold, Suite 2400 Detroit, Michigan, 48226
(313) 967-0100

## DEFENDANTS

OAKLAND COUNTY, MICHAEL BOUCHARD, DAVID SCHOENEWEG, and various unknown named officers

County of Residence of First Listed Defendant: OAKLAND
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☒ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
42 USC 1983

Brief description of cause:
FOURTH AMENDMENT VIOLATION AND RELATED STATE LAW CLAIMS

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE DOCKET NUMBER

DATE: 09/03/2026

SIGNATURE OF ATTORNEY OF RECORD: s/Michael Kemnitz

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE